No. 23,549.

THE STATE OF KANSAS, ex rel. RICHARD J. HOPKINS, as Attorney-general, et al., *Plaintiff*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al., *Defendants*.

### SYLLABUS BY THE COURT.

MANDAMUS—*Utilities Commission—Changing Railroad Freight Rates—Notice of Hearing Required.* The public utilities commission cannot, by declaring that it retains jurisdiction of a matter in which it makes a complete order fixing railroad freight rates in response to an application pending before it, defeat the necessity of giving the thirty days notice required by section 8341 of the General Statutes of 1915, in a subsequent proceeding in the same matter to cancel the order first made.

Original proceeding in mandamus. Opinion filed April 11, 1921. Incidental writ denied.

*Richard J. Hopkins*, attorney-general, *A. E. Helm*, and *William A. Smith*, both of Topeka, for the plaintiff.

*William R. Smith, Owen J. Wood, Alfred A. Scott, R. W. Blair, Luther Burns*, all of Topeka, *W. P. Waggener, W. W. Brown*, both of Atchison, *R. R. Vermillion, W. F. Lilleston*,

both of Wichita, *Samuel W. Sawyer*, of Kansas City, Mo., *James L. Coleman*, of Chicago, Ill., and *Byron Clark*, of Omaha, Neb., for the defendants.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff, in an original proceeding in mandamus, asks the court to issue an incidental writ directing the defendants to comply with an order made by the public utilities commission on April 4, 1921, reducing intrastate freight rates on stock and feeder cattle, effective from and after April 10, 1921, to the close of business on May 31, 1921.

The plaintiff has filed its petition for a writ of mandamus to compel the defendants to put in effect the rates mentioned; an alternative writ has been issued; and that writ is returnable April 11. The incidental order is asked to put in effect, until the final hearing, the rates ordered by the public utilities commission.

It appears from the petition that on August 26, 1920, the interstate commerce commission made an order permitting the defendants to increase their freight rates in this and other states thirty-five per cent; that this increase covers shipments of cattle of the kind named; that afterward the defendants made application to the then court of industrial relations for permission to put in effect the same rates within the state of Kansas; that on October 9, 1920, the court of industrial relations made an order effective from and after October 21, 1920, for a period of six months, permitting the defendants to increase their rates thirty per cent over and above the rates that had been in effect prior thereto between points within the state of Kansas; that those rates are still in effect; that on March 24, 1921, the defendants published a tariff canceling the increase of thirty-five per cent in the rates on stock and feeder cattle permitted under the order of the interstate commerce commission, whereby the interstate rates, on that class of shipments, prior to August 26, 1920, were again put into effect. This makes the present interstate rates on stock and feeder cattle lower than the present intrastate rates. The petition alleges that the interstate rates now in effect are discriminatory against shippers within the state of Kansas, and are therefore illegal. It appears that the order made by the public utili-

ties commission canceling the order made on October 9, 1920, allowing an increase of thirty per cent so far as it concerns the shipment of stock and feeder cattle within the state, was for the purpose of assisting in the shipment of cattle from the western part of the state to pasture land in the central and eastern part, and that these shipments will cease about May 31. It follows that if the rates ordered are to accomplish their purpose, they must be put into effect at once; delay will render the order of the public utilities commission of no effect.

A part of the order permitting the thirty per cent rate increase reads:

"That the court herewith retains jurisdiction of this cause, of the subject matter herein, and of the parties hereto, to make such further or additional order on the testimony now before it or which may be hereafter taken, as may seem necessary and just."

Did the public utilities commission have authority to make the order sought to be enforced without the notice required by section 8341 of the General Statutes of 1915? To answer this question it is necessary to examine the statutes giving to the public utilities commission authority to make rates. Section 8341 in part reads:

"Upon a complaint in writing made against any common carrier or public utility governed by the provisions of this act, . . . the commissioners shall proceed, with or without notice, to make such investigation as they may deem necessary. The commissioners may, upon their own motion, and without any complaint being made, proceed to make such investigations, but no order affecting such rates, . . . shall be made or entered by the commission without a formal public hearing, of which due notice shall be given by the commission to such public utility or common carrier or to such complainant or complainants, if any."

The next section of the statute provides that the carrier shall be given thirty days' written notice of the time and place of the hearing. In the present case the public utilities commission, on April 1, 1921, issued an order to the defendants notifying them to "appear at a hearing to be held in Topeka, Kansas, on April 4, 1921, at ten o'clock a. m. to justify the retention of the thirty per cent (30%) increase authorized in Docket No. 3451 in so far as it has application intrastate on range and stock cattle moving from the breeding grounds in Kansas to the maturing or finishing pastures in said state." Docket No.

3451 was the proceeding in which the thirty per cent increase in rates was authorized.

Part of section 8398 of the General Statutes of 1915 reads:

"It shall be unlawful, and a violation of this act, for any railroad company to change the classification of its freights or to raise the charges therefor, without first having obtained an order from said commissioners permitting such: *Provided*, That nothing in this act shall be construed to prevent the railroads, with the consent of the said commissioners, from declaring and making emergency rate or rates for a limited time."

Section 8433 provides that it shall not—

"Be lawful to charge a greater freight rate to haul any class of goods for a shorter distance than for a longer one in the same general direction under like conditions, and over the same system of road in Kansas, except by the consent of the commissioners."

The last two sections were a part of the old board of railroad commissioners law, are now a part of the public utilities commission law, and the latter commission can act under them; but the order in question does not come within the provisions of either statute for the reason that the rates there provided for may be put in effect by the railroads with the consent of the public utilities commission; power is not there given to the commission to establish these rates over the objections of the railroads. The court does not know of any other statute authorizing the public utilities commission to establish what may be termed emergency rates. Whatever authority that commission had to make the order sought to be enforced must be found in section 8341 of the General Statutes of 1915. That statute provides for thirty days' notice.

The state must contend that the commission had power to retain jurisdiction of the entire matter and to change the order in any particular or set it aside, without giving the thirty days' notice. This contention, if it is good, will give to the public utilities commission, by retaining jurisdiction, power to change rates, to modify or cancel any order made by it in any proceeding that is brought before it, or to put in effect any order different from that made in the first instance, without thirty days' notice. If a proceeding should be instituted before the commission governing the entire schedule of railroad rates in the state, and an order should be made, the commission could avoid the statutory requirement of notice in all

The State, *ex rel.*, v. Railway Co.

subsequent railroad rate proceedings by declaring that it retains jurisdiction of the entire proceeding for the purpose of making any order in the future that it might deem necessary. The validity of the statute might be seriously questioned if it gave to the public utilities commission the power here attempted to be exercised.

It probably cannot be succesfully questioned that the public utilities commission has power to continue from time to time any proceeding pending before it, to make incidental orders therein, or to make partial or supplemental orders in proper cases; but the commission does not have power, after a proceeding to fix railroad freight rates has been disposed of on an application pending before it, to retain jurisdiction and thereby defeat statutory requirements concerning notice.

Another statute which has some bearing on the question under consideration is section 8345 of the General Statutes of 1915, part of which reads:

"All . . . rates . . . fixed by the commission shall be in force and effect on and after thirty days from the making thereof and expiration of thirty days after service aforesaid, shall be *prima facie* reasonable unless, or until, changed or modified by the commission or in pursuance of proceedings instituted in court as provided in this act."

Section 8345, which must be considered with section 8341, does not dispense with notice; while it does contemplate that the commission may change or modify its orders, yet the statute does not contemplate that the change or modification may be made without notice. These changes or modifications must be made in the manner required by law after thirty days' notice has been given.

The incidental order requested is denied.