(40 P.3d 310)

No. 87,760

THE KANSAS ENERGY GROUP, *Appellant,* v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee.*

Opinion filed January 11, 2002.

*Robert C. Johnson* and *Lisa C. Langeneckert,* of St. Louis, Missouri, and *Robert B. Van Cleave,* of Gates & Clyde Chartered, of Overland Park, for appellant.

*John McNish,* advisory counsel, *Paula Lentz,* assistant general counsel, and *Susan B. Cunningham,* general counsel, for appellee.

*Niki Christopher,* for intervenor Citizens' Utility Ratepayer Board.

*John P. DeCoursey* and *Larry M. Cowger,* of Overland Park, for intervenor Kansas Gas Service Company, a Division of ONEOK, Inc.

Before MARQUARDT, P.J., ELLIOTT and BEIER, JJ.

MARQUARDT, J.: The Kansas Energy Group (KEG) appeals the order of the Kansas Corporation Commission (KCC) to distribute refunds of unlawfully collected ad valorem taxes to qualified low-income residential customers. We affirm.

In January 1999, Kansas Gas Service Company (KGS) submitted a proposal for the distribution of the ad valorem tax refunds for the years 1983-1988 that were mandated by the Federal Energy

Regulatory Commission (FERC). The primary proposal involved the allocation of 26.16% of the tax refunds to certain designated KGS customers. These customers were mainly large industrial users. The remaining 73.84% of the ad valorem tax refunds were to be distributed to residential, general sales, and transportation customers. Large commercial class members were not to receive any portion of the remaining 73.84% refund.

The staff of the KCC recommended that the KGS proposal be adopted. On December 17, 1999, the KCC ordered that whenever possible, an attempt should be made to distribute the refunds to the customers who paid the taxes. The KCC order stated that any party could file a petition for reconsideration within 15 days of the date of the order. However, it does not appear that any party to this litigation submitted a petition for reconsideration.

As the local distribution companies (LDCs), including KGS, were finalizing their proposals for the distribution of the ad valorem tax refund, Kansas was hit with one of the coldest winters in recent history and natural gas prices rose to the highest levels in years. Especially hard hit were low-income persons and those with fixed incomes.

In response to this crisis, KGS filed a motion in December 2000, seeking to amend the distribution plan ordered by the KCC on December 17,1999, so that the refunds would be paid to low-income residential customers who suffered most because of the combination of cold weather and high gas prices. Its motion requested that no funds be distributed "until the litigation associated with the Ad Valorem Tax cases at the FERC and various appeals courts were completed."

In January 2001, the Kansas House of Representatives passed H.R. No. 6006 and the Kansas Senate passed S.R. No. 3.808, which urged the KCC to order that all ad valorem tax refunds be distributed to households with an income below 300% of the poverty level. The KCC approved an amended distribution plan so that only households with an income below 300% of the poverty level would be eligible for a refund.

After this change in the KCC's order, several companies, including KEG, petitioned the KCC for reconsideration of this mod-

ified distribution plan. KEG argued that distributing the ad valorem tax refunds to low-income residential customers constituted an unconstitutional taking of property and was otherwise illegal because KEG had paid the taxes.

On appeal, KEG claims that the KCC erred when it: (1) refused to give a refund to the customers who paid the charges; (2) engaged in retroactive ratemaking; (3) violated the fundamental rule of public utility law that one class of customers must not bear the burden of costs of another class; (4) engaged in unreasonable discrimination and undue preference; (5) applied the PGA and COGR tariff unreasonably, arbitrarily, capriciously, and unlawfully; and (6) reversed a prior final and nonappealable order. The first five of these issues are identical to those raised in *Farmland Industries, Inc. v. Kansas Corporation Comm'n,* 29 Kan. App. 2d 1031, 37 P.3d 640 (2001) (opinion written to include *Kansas Industrial Consumers v. Kansas Corporation Comm'n,* No. 87,500). Accordingly, we incorporate our November 21, 2001, order in those cases by reference and, in accordance with Rule 7.041 (2001 Kan. Ct. R. Annot. 48), affirm the KCC's order authorizing distribution of ad valorem tax refunds to the designated low-income customers as to those issues.

KEG also argues that the KCC erred by reversing a final order that had been in existence for more than 1 year. Without citation to a statute or case law, KEG argues that the challenged order "reaches far beyond the realm of reasonableness" because it allowed the KCC to rescind its December 1999 order.

KEG cites *Cal. Mfrs. Assn v. Public Utilities Com.,* 24 Cal.3d 836, 157 Cal. Rptr. 676, 598 P.2d 836 (1979), and *Providence Gas Co. v. Burke,* 119 R.I. 487, 380 A.2d 1334 (1977), as support for its position that the KCC is not allowed to alter a final order.

The California case is clearly distinguishable because California has a statute that details how the distribution of refunds is to be handled. Kansas has no statute that details a procedure for the distribution of refunds. The Rhode Island case is distinguishable because Rhode Island's statute did not give its Public Utilities Commission the power to do what it did. There is no statute in Kansas that prohibits the KCC from ordering distribution of the ad valorem tax refund to low-income individuals.

According to K.S.A. 2000 Supp. 66-118l, all orders or decisions of the KCC become effective upon service of the order or decision, unless otherwise ordered, or unless a stay is granted. Such orders are considered conclusive as to the matters involved. A "final order" has been defined as one that terminates the litigation on the merits and leaves nothing to be done except to enforce the result. In an administrative setting, a final order needs to be more than a mere procedural ruling, and "finality" should be interpreted in a pragmatic way. *Kansas Pipeline Partnership v. Kansas Corporation Comm'n*, 22 Kan. App. 2d 410, 418, 916 P.2d 76, *rev. denied* 260 Kan. 994 (1996).

In its plan for distribution of the ad valorem tax refunds filed on January 15, 1999, KGS recognized that the payment of the refunds plus interest was still being litigated at the FERC and in the appellate courts.

The KCC order of December 17, 1999, stated that KGS's Alternative 1 distribution plan was approved with clarification. The order stated that "the parties should retain these refunds in the Commission-approved accounts pending final disposition by issuance of a final order, no longer subject to any appeal or petition for review, in the *Anadarko* case as requested by KGS." See *Anadarko Petroleum Corp. v. F.E.R.C.*, 196 F.3d 1264 (D.C. Cir. 1999), *cert. denied* 530 U.S. 1213 (2000).

On May 3, 2001, the KCC ordered that the refund be paid only to residential gas customers who have a family income below 300 percent of the federally defined poverty level. The refund would be credited to the customer's bill. In its findings of fact, the KCC recognized that the December 17, 1999, order held the distribution in abeyance until the *Anadarko* litigation determined what monies would be available for distribution.

An order which delays distribution of money pending the outcome of other litigation is not a final order. Because the December 17, 1999, order was not a final order, the KCC had the authority to modify its order.

Affirmed.