NOT DESIGNATED FOR PUBLICATION

No. 129,475

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MODERN WEALTH MANAGEMENT, LLC, and MODERN WEALTH BUSINESS, LLC,
*Appellants*,

v.

R. DREW JONES and DOGWOOD WEALTH MANAGEMENT, LLC,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Oral argument held February 10, 2026. Opinion filed April 10, 2026. Affirmed in part, vacated in part, and remanded with directions.

*Holly A. Dyer* and *Mckenzie K. Meradith*, of Foulston Siefkin LLP, of Wichita, and *Anthony F. Rupp*, of the same firm, of Overland Park, and *Ian Wright*, pro hac vice, of Alston & Bird, of Los Angeles, California, for appellants.

*Charlie J. Harris Jr.* and *Nicholas Rex Daugherty*, of Seyferth Blumenthal & Harris LLC, of Kansas City, Missouri, for appellees.

Before ARNOLD-BURGER, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: Modern Wealth Management, LLC, and Modern Wealth Business, LLC, (Modern Wealth) appeal a portion of the district court's order for a temporary injunction enjoining its former employee, R. Drew Jones, from sending out letters to the clients of Modern Wealth which he had served prior to leaving the company. Although the district court granted in part Modern Wealth's motion for a temporary injunction, it also sua sponte ordered Modern Wealth to send out "neutral" notices to its clients who

were formerly served by Jones. Based on our review of the record, we find that the district court abused its discretion by granting relief that was not requested by the parties. Thus, we vacate the portion of the temporary injunction that requires Modern Wealth to send "neutral" notices, and we remand this case to the district court for further proceedings.

FACTS

Jones began working as an investment advisor representative for Barber Financial Group in 2011. Several years later, Jones entered into an employment agreement with Barber Financial. The employment agreement included—among other things—a restrictive covenant or nonsolicitation provision. Specifically, section 5(d) of the employment agreement provides:

> "Nonsolicitation. [Jones] agrees that, while [Jones] is employed by the Company and during the 24-month period immediately following the Date of Termination (the "Post-Employment Non-Solicitation Period"), [Jones] shall not directly or indirectly:
>
> . . . .
>
> "iii. induce or attempt to induce any current Company client, customer, investor, supplier, licensee, or other business relation of the Company or any of the Affiliated Entities to cease doing business with the Company or such Affiliated Entity, or in any way interfere with the relationship between any such client, customer, investor, supplier, licensee, or business relation, on the one hand, and the Company or any Affiliated Entity, on the other hand."

In 2023, Modern Wealth acquired substantially all the assets of Barber Financial. Following the acquisition, Jones accepted Modern Wealth's offer of employment as a financial advisor under the terms of the previously signed employment agreement with Barber Financial.

2

On the morning of October 4, 2024, Jones hand-delivered a written letter of resignation to Modern Wealth. In the letter, Jones stated that he was going to work for Dogwood Wealth Management, LLC, and provided his new contact information.

After delivering his resignation letter, Jones drove to a nearby post office and mailed letters—commonly known as "tombstone" letters—to several of Modern Wealth's clients that he had previously served. In the tombstone letter, Jones informed the clients that he had joined Dogwood Wealth and provided his new contact information. The letter also stated: "This correspondence is for informational purposes only and is not a solicitation." Several of Modern Wealth's clients who received a tombstone letter from Jones subsequently moved their account to Dogwood Wealth.

Shortly after Jones submitted his resignation letter, Modern Wealth assigned new investment advisors to the 135 clients that Jones had previously served. The newly assigned advisors then called these clients to inform them that Jones was no longer employed at Modern Wealth. However, the Modern Wealth financial advisors did not provide the clients with Jones' new contact information. Moreover, it is alleged by Jones that Modern Wealth withheld his new contact information from some of the clients even though they had requested this information.

On October 18, 2024, Modern Wealth filed a verified petition in district court against Jones and Dogwood Wealth seeking injunctive relief and damages. Significant to this appeal, Modern Wealth sought a temporary injunction enjoining Jones and Dogwood Wealth from "violating the terms of the Employment Agreement," "accessing, using, or disclosing in any way [Modern Wealth's] confidential information," "inducing or attempting to induce any current [Modern Wealth] client, customer, investor, supplier, licensee, or other business relation . . . or its affiliates to cease doing business with [Modern Wealth] or its affiliates, or in any way interfering with the relationship between any such client . . . and [Modern Wealth]," and "avoiding or attempting to avoid

3

providing discovery in this litigation by purging, destroying, altering, modifying, or concealing any of [Modern Wealth's] confidential or trade secret information."

In addition, Modern Wealth filed a motion and application for a temporary restraining order, temporary injunction, expedited hearing, and expedited discovery. In its motion for a temporary injunction, Modern Wealth requested the district court to:

"(1) enter a Temporary Restraining Order against Defendant Jones as set forth in the Verified Petition and Memorandum in Support to preserve the status quo until a hearing is held on the motion for Temporary Injunction; (2) enter an order granting expedited discovery as set forth above; (3) set an expedited hearing on the Motion for Temporary Injunction; and (4) after hearing, enter a Temporary Injunction against Defendant Jones as more fully set forth in the Memorandum of Support."

On October 23, 2024, the district court held a hearing on the motion for a temporary restraining order. After hearing arguments from the parties, the district court denied Modern Wealth's request for a temporary restraining order, noting that it had offered only "conclusory allegations" that Jones violated the employment agreement. Even though the district court denied the temporary restraining order, it granted Modern Wealth's request for limited expedited discovery. The expedited discovery allowed Modern Wealth to issue interrogatories and requests for production to Jones. It also allowed Modern Wealth to take Jones' deposition in advance of the hearing to consider the temporary injunction motion.

The district court held an evidentiary hearing on Modern Wealth's motion for temporary injunction on December 3 and 4, 2024. At the hearing, the district court heard the testimony of J.P. Rankin, Modern Wealth's chief compliance and legal officer, and Dean Barber, Modern Wealth's managing director of its Lenexa office who is also the former owner of Barber Financial. The district court also heard testimony from Jones and nine of his clients that had moved their accounts from Modern Wealth to Dogwood

4

Wealth. Jones also submitted into evidence additional sworn declarations or verifications from former Modern Wealth customers attesting that they willingly chose to open an account with Jones at Dogwood Wealth without being solicited.

At the conclusion of the hearing, the district court granted the motion for a temporary injunction in part and denied it in part. Even though the district court temporarily enjoined Jones or anyone acting on his behalf from "sending any future tombstone announcements or similar notifications" to Modern Wealth's clients until the termination of the litigation or by October 4, 2026, whichever occurred earlier, it denied the remainder of Modern Wealth's motion. Furthermore, despite not being requested to do so, the district court also ordered Modern Wealth to send so-called "neutral" notices to its clients whom Jones had formerly served.

Specifically, the district court stated on the record:

"I'm going to require the plaintiff in this case to issue a neutral notice to all his former clients that . . . says so-and-so is no longer with this firm. Your accounts can be [handled] by so-and-so. We've assigned so-and-so. Your former advisor . . . Jones is no longer here. He's now affiliated with another firm called Dogwood Financial."

The district court further explained:

"You're going to issue a notice to every single client that he ever had that he's gone, this is where he's at, we're still willing to handle your account. We have people assigned ready to go so there's no confusion because we honor your business and we honor . . . our fiduciary obligations. That way if people say, we wondered what happened to [Jones]— and if they want to go hire him, they can go hire him."

Although the district court directed the parties to cooperate on the language of a proposed journal entry, one was not filed until July 10, 2025. In the interim, the parties continued to file a variety of motions in the district court. On January 23, 2025, Modern

5

Wealth filed a premature notice of appeal, and the following day it filed a motion to suspend or stay the "neutral" notice requirement pending appeal. The motion to suspend or stay was subsequently denied by the district court.

At a motion hearing held on July 8, 2025, the district court inquired about the status of the temporary injunction journal entry. Two days later, the district court entered a journal entry in which it temporarily enjoined Jones—or anyone acting on his behalf— from sending additional "tombstone" announcements to the clients of Modern Wealth that he had previously served. In addition, the district court directed Modern Wealth to issue "neutral" notices to each of its clients whom Jones had served prior to moving to Dogwood Wealth.

Regarding the "neutral" notices, the district court determined:

"a. That the Court has ordered the Notice to be sent to such customers and the order will be enclosed with the Notice;

"b. That Jones is no longer employed or affiliated with Plaintiff;

"c. That the customer's account with Plaintiff is being handled by a new advisor;

"d. That Jones is now employed with Dogwood Wealth Management, LLC, and the contact information at which he may be reached;

"e. That Jones is temporarily prohibited from soliciting or inducing Plaintiff's customers to cease doing business with Plaintiff; and

"f. That the customers may choose whomever they want to be their financial advisor and are not prohibited from moving their accounts to Dogwood Wealth Management, LLC, if they so choose."

On July 14, 2025, Modern Wealth filed an amended notice of appeal. Ten days later, Modern Wealth filed a motion to alter or amend the "neutral" notice requirements contained in the district court's order. In the alternative, Modern Wealth asked that the district court approve a supersedeas bond and to order a suspension or stay. Modern Wealth's argument was based on a purported "intervening change" in the law as a result

6

of amendments to K.S.A. 50-163 that became effective July 1, 2025. The following month, the district court denied Modern Wealth's motion and ordered it to "immediately comply" with the district court's order to issue the "neutral" notices. On August 15, 2025, Modern Wealth filed a notice of appeal from that order. Then, it filed yet another amended notice of appeal on August 18, 2025.

ANALYSIS

*Appellate Jurisdiction*

As a preliminary matter, Jones and Dogwood Wealth claim that we lack appellate jurisdiction over this appeal because Modern Wealth failed to file a notice of appeal within 30 days of the district court's December 4, 2024 bench ruling on the motion for a temporary injunction. Jones and Dogwood Wealth assert that the order was "immediately" appealable under K.S.A. 60-2102(a)(2), and the decision was final with the district court's oral ruling. See *Investcorp v. Simpson Investment Co.*, 277 Kan. 445, 454, 85 P.3d 1140 (2003) (for an appellate court to have jurisdiction over an appeal filed within 30 days of a journal entry, the journal entry must be a final decision under K.S.A. 60-2102[a][4]).

The right to appeal is entirely statutory and is not a right contained in the United States or Kansas Constitutions. *State v. Clark*, 313 Kan. 556, 561, 486 P.3d 591 (2021). Kansas courts have judicial power to hear matters over which they have jurisdiction. That jurisdiction derives from article 3, sections 1, 3, and 6 of the Kansas Constitution. *In re A.A.-F.*, 310 Kan. 125, 135, 444 P.3d 938 (2019). "An appellate court exercises unlimited review over jurisdictional issues and has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, the court must dismiss the appeal." *Wiechman v. Huddleston*, 304 Kan. 80, 84-85, 370 P.3d 1194 (2016). Subject to limited exceptions, appellate courts have jurisdiction only when an appeal is taken within

7

the time limitations and in the manner set forth in the applicable statutes. 304 Kan. at 86-87.

In this case, Modern Wealth is appealing from an order that granted in part and denied in part a motion for injunctive relief. Although the litigation is ongoing, this appeal is permitted by K.S.A. 60-2102(a)(2), which provides that a party may appeal from "[a]n order that grants, continues, modifies, refuses or dissolves an injunction, or an order that grants or refuses relief in the form of mandamus, quo warranto or habeas corpus." In turn, the timely filing of a notice of appeal invokes the jurisdiction of this court. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

In most civil cases, Kansas law requires an appellant to file a notice of appeal within 30 days from the "entry of the judgment." K.S.A. 60-2103(a). Judgment is entered when a journal entry or judgment form is filed. K.S.A. 60-258. A judgment is effective only when a journal entry or judgment form is signed by the judge and filed with the clerk of the district court. *Valadez v. Emmis Communications*, 290 Kan. 472, 482, 229 P.3d 389 (2010). Still, a premature notice of appeal filed after oral pronouncement of the judgment becomes effective when the journal entry of final judgment is filed. Supreme Court Rule 2.03(a) (2026 Kan. S. Ct. R. at 15).

Jones and Dogwood Wealth argue that the district court's order was immediately effective and thus appealable when it was pronounced on December 4, 2024. Although this may be true, the temporary injunction did not become final for the purpose of establishing appellate jurisdiction until the journal entry was filed with the clerk of the district court. See K.S.A. 60-2103(a); K.S.A. 60-258. As a panel of this court has found, even a significant delay between an oral pronouncement and the filing of a journal entry does not change the effective date for purposes of appeal. See *Williams v. Pinson*, No. 124,997, 2023 WL 1879428, at *4 (Kan. App. 2023) (unpublished opinion).

8

Here, Modern Wealth filed a premature notice of appeal after the district court made its oral ruling on the motion for temporary injunction but before the district court filed a journal entry. After the journal entry was eventually entered, Modern Wealth filed an amended notice of appeal four days later. Finally, one day after the district court denied its motion to alter or amend, Modern Wealth filed another notice of appeal. Under these circumstances, we find that Modern Wealth has timely appealed the district court's ruling to this court. Consequently, we conclude that we have appellate jurisdiction over this appeal.

*Abuse of Discretion*

On appeal, Modern Wealth contends that the district court abused its discretion by ordering Modern Wealth to send out "neutral" notices to its clients who were previously served by Jones. Because no cross-appeal has been filed, there is no challenge to the other portions of the district court's ruling on Modern Wealth's motion for temporary injunction. Modern Wealth also appeals from the district court's denial of its motion to alter or amend the portion of the temporary injunction requiring it to send out the "neutral" notices.

"When a party alleges a district court erred in ruling on a motion for a temporary injunction, appellate courts review the decision for an abuse of discretion." *League of Women Voters of Kansas v. Schwab*, 318 Kan. 777, 788, 549 P.3d 363 (2024). An abuse of discretion will be found only when a district court's decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. 318 Kan. at 788. As the party challenging a portion of the temporary injunctive relief granted by the district court, Modern Wealth bears the burden of proving the district court abused its discretion. See *Steffes v. City of Lawrence*, 284 Kan. 380, 393, 160 P.3d 843 (2007).

9

Temporary injunctions "are provisional remedies intended to maintain the status quo and prevent harm to a claimed right pending a final determination of the controversy on its merits. They are not meant to determine any controverted right but to prevent injury to a claimed right until a full decision can be made." *State ex rel. Kobach v. Harper*, 65 Kan. App. 2d 680, 686, 571 P.3d 6 (2025). In other words, the purpose of a temporary injunction is to preserve the status quo until the controversy is finally resolved. *Garetson Brothers v. American Warrior, Inc.*, 51 Kan. App. 2d 370, 391, 347 P.3d 687 (2015) (defining status quo to mean "'the last actual, peaceable, noncontested position of the parties which preceded the pending controversy'").

Because a temporary injunction allows a party to receive relief before a final ruling is made on the merits of the controversy and before the parties are given a full opportunity to present their case, it is an extraordinary remedy and the "'right to relief must be clear and unequivocal.'" *Harper*, 65 Kan. App. 2d at 691. Accordingly, to obtain temporary injunctive relief, the requesting party must show: (1) a substantial likelihood of success on the merits; (2) a reasonable probability of irreparable future injury; (3) an action at law will not provide an adequate remedy; (4) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (5) the injunction, if issued, would not be adverse to the public interest. See, e.g., *Downtown Bar and Grill v. State*, 294 Kan. 188, 191, 273 P.3d 709 (2012).

Here, the district court did not merely enter a temporary injunction on the grounds requested by Modern Wealth. Rather, it expanded its order to include a remedy that was not requested by either party. Although the district court inquired at the temporary injunction hearing about any obligation Modern Wealth might have under the Financial Industry Regulatory Authority (FINRA), the district court did not provide the parties with advance notice that it was considering expanding the temporary injunction to require Modern Wealth to send out the "neutral" notices to its clients who Jones had served before leaving its employment.

10

Under these circumstances, we find that the district court abused its discretion when it sua sponte ordered Modern Wealth to send the "neutral" notices, and we vacate that portion of the temporary injunction. See *Wichita Terminal Ass'n v. F.Y.G. Investments, Inc.*, No. 103,015, 2011 WL 588505, at *11 (Kan. App. 2011) (unpublished opinion) (reversing portion of an order in which the district court sua sponte imposed a remedy that was not requested by the parties). As K.S.A. 60-905(a) provides, "[n]o temporary injunction shall be granted until after reasonable notice to the party to be enjoined and an opportunity to be heard." Although the district court has wide latitude in shaping an equitable remedy, its discretion to do so is not unlimited. See *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1252-54 (10th Cir. 2006) (vacating district court's sua sponte issuance of a preliminary injunction that was not requested by the parties).

In summary, we find that the district court abused its discretion by sua sponte ordering Modern Wealth to send "neutral" notices to its clients previously served by Jones. As a result, we vacate the provisions of the temporary injunction that require the "neutral" notices to be sent. However, nothing in this opinion shall be deemed to affect the remaining provisions of the temporary injunction, which remain in full force and effect. In light of our decision, we do not need to address the other issues or arguments presented by the parties.

Affirmed in part, vacated in part, and remanded with directions.